Good morning Your Honor. Richard Aroyeke also for Harmony Singh. This case went to the BIA twice. The first time the BIA disagreed with the judge's adverse credibility determination. And the second time the BIA just accepted the judge's explanations that the respondent, the petitioner in this case, was not a credible witness. The judge relied to a great deal on speculation about the respondent, the petitioner's activities, his arrests that he suffered. Why would the police be interested in him after a four-year absence from India when that very fact is sufficient to show that if he goes back to India, he will, in fact, or if he does come in contact with the police, they're likely to do to him what they previously did in the past. But the judge says that is not plausible because why would the police be interested in him? He was never a militant. He was only suspected of being a militant. And that's enough to trigger the protection under the INA because the police thought he had links with the militants. That is all the respondent said throughout his testimony, plus the fact that he's a supporter of the party that demands also an independent six states for six. And the immigration judge in this case simply would not accept that testimony as credible. And went to great lengths to just explain away on remand, that is, why she thought the petitioner was not a credible witness and denied the case all over again. So here, before this court, the issue is whether or not the IJ properly entered that adverse credibility finding, whether or not the BIA actually erred in accepting the immigration judge's explanation. Because nothing changed between the first appeal and the second appeal. Nothing changed. The only thing that changed was the submission of country conditions report. And all the country conditions report submitted indicates that the police still abuse detainees on a regular basis. That did not change. So the immigration judge's decision just doesn't make any sense. Well, so in this case, they go on to say even assuming that he's credible, conditions in India have changed, just like the last one. And then there's a discussion in the second decision towards the bottom. The problem with that even if statement is the judge is simply trying to, in case her credibility determination is overruled, she thinks that the conditions have changed to such an extent that she'd be able to go back. But they can, the IJ, the IJ can give an alternate decision. And to the extent that alternate decision is not imbued with the adverse credibility determination that we may or may not set aside, they can do that. And then we have to look at the alternative disposition. True. And so let's just assume for a minute, for purposes of this discussion while we have you up here, that we would agree with you that this adverse credibility decision doesn't stand up. So then we have to go to the alternate decision that the IJ gave, which is that conditions have changed, just like we were discussing in the earlier case. Why isn't the IJ's decision here sufficient on that point? Because if we assume that the petitioner here was credible. I gave you that. Right. Then the burden is on the government to show by a preponderance. Well, they say, the IJ says in this particular case, he says, he specifically says the evidence presented by the Department of Homeland Security has rebutted the presumption that he would face persecution in India at the present time were he required to return there. Right. Why? That's what I'm asking you. Why isn't this judge's analysis of that issue sufficient? That's just a statement. That is not analysis. That goes on. I want you to help me. I want you to tell me what's wrong with this. What is wrong with that is it takes a conclusion without doing an analysis of how the government's submission, that is the country conditions report, will affect the petitioner's specific situation if he is returned to India. It just concludes that the government's submission has rebutted the presumption of a well-founded fear without actually saying, wait a minute, this person is from Nawanshah. If he goes back to Nawanshah, which is where his family lives, where he lives, how is the changed country conditions reported in this report going to affect him? One, that country conditions report indicates that the police in India still abuse detainees. There are extrajudicial killings. Nobody in his right mind would want to go back there if he's been arrested five times in the past on false allegations that he had aided militants or Sikh separatists to face the same police who arrested him five times. Why would they want to go back there? And the judge is saying the fact that this country conditions report states that or does not mention Punjab, rather, the respondent should be okay and go back. They talk about Jammu and Kashmir. Jammu and Kashmir is in conflict because they are still fighting for separation. If India fights separation in Jammu and Kashmir, it stands to reason that India will fight separation in Punjab or anywhere else in India. And if they are alleging that this individual has supported Sikh separatists by providing them food, shelter, and whatever else, how is that going to change if he goes back now? The judge's analysis, actually the judge does not make an analysis. She makes a conclusion. And that conclusion is simply insufficient. This court has held in numerous cases that the State Department report is not sufficient to rebut specific testimony of experiences by an applicant. And that's what we have here. There's nothing to show that this testimony is not true. Unless there are any other questions. Why don't we hear from the government? And you've saved quite a bit of time, so you can respond. Thank you. Good morning. May it please the Court. My name is Jeffrey Liest, appearing on behalf of the Attorney General. In this case, the agency properly determined that the petitioner was not credible in his testimony. And that even if he was credible, that nevertheless changed country conditions indicating that he no longer has a well-founded fear of persecution in India. The credibility determination spanned several different issues. There was the issue that he didn't put in his application that his sister had been, you know, had died because of his involvement with the Sikh movement in India. He didn't include that he had had a tooth knocked out in one of his encounters. Despite the fact that he was claiming that he was a supporter of the Akhili Dalman Party, he had very little knowledge of actually who had won elections, who had won those elections, and things of that nature. There's also the issue that he had testified that when he was arrested one time, three people had been killed who were informants of the police, which was not consistent with his application. And when that was discussed, he paused for a long period of time and said, oh, yeah, I told the person who was doing the application to cut that out, and they didn't. So the immigration judge here had substantial reason to kind of doubt whether or not the petitioner was testifying credibly as to what had happened to him and why. As a result, the immigration judge asked for corroborating documents, and the documents which were submitted did very little to actually bolster his claim or support his claim. Here we've got a medical document which doesn't actually explain what happened to him, why anything happened to him. There are several affidavits from people in India, but they don't actually go to his claim. They actually discuss more his wife still living in India. Therefore, the immigration judge found that this evidence did not help him, and he was not credible. The immigration judge, however, also found in the alternative that even if he were to be deemed credible, even if they were to assume that he had suffered past persecution, the well-founded fear had been rebutted by the government. And he looked at the country reports. There's an Amnesty International report. There's reports in the United Kingdom as well, all discussing the situation in Punjab, or lack thereof, as well as how it affects people who are Sikhs and other people in India. In this case, the immigration judge looked at his claim and said, you know, here's the reasons why. You know, the situation in Punjab, while it was very bad in the early and mid-'90s, has significantly gotten better, that there's, you know, not enough evidence that people who supported this party would be persecuted by the police in Punjab if he were returned. As such, the immigration judge found that, you know, looking at his case and looking at the submission from the government, there was insufficient evidence that he would actually face any harm. Assuming for purposes of my question that we reverse the adverse credibility finding and assume further that we don't remand for additional explanation about credibility, we simply deem him credible. Assume that. I'm not asking you to conceive, but I'm asking you to assume that. We then have to have some form of individualized determination as to how the changed country conditions might affect this individual. Now, unlike the prior case, I don't know whether you were familiar with the record, but you certainly heard the argument, the IJ went through the things that Mr. Singh, that Mr. Singh, had testified to. So here, assuming that all of this is true, and then as I look at the country reports and the other evidence about what's going on, I conclude that a person who's done those things isn't going to be subject to further persecution or its insufficient likelihood. Here in the IJ's second decision, there's nothing except country reports. What am I supposed to do with that? That is to say, how can this be an individualized determination such that it satisfies our criterion? The immigration judge, I mean, he doesn't just say the magic word country reports and then end the discussion. He actually points to certain aspects from the country reports, from the other information, and then discusses why this petitioner will not suffer persecution. Now, where does the IJ link these country reports, which the IJ, which she does discuss, I mean, she just doesn't say country reports, period, no further. There are several paragraphs on the country report, but where does the IJ link this particular individual saying, okay, given what this person has done, assuming that he's credible, I find that based on these country reports? I would think that that's implicit in the immigration judge's discussion, that because the immigration judge points to specific aspects of those reports, that it's implicit that he's actually referring to how this affects the petitioner's claim. The immigration judge doesn't exactly, you know, lay it out in the plaintiff's terms, which is unfortunate, but I think that it's implicit in the decision that the immigration judge is actually looking at his claim, looking at the reports and pointing to the specific aspects of the report which undermine any well-founded jury he may have. Roberts. Okay. If there are no further questions, the Respondent respectfully requests that the petition for review be denied. Thank you. Thank you. Response. The government and the immigration judge mentions omissions from the Respondent's application. This court has held that the mere omission of details is insufficient to uphold others' credibility findings. That was in Bandari v. INS, also in Musab v. Mukasey. Yeah, the mere omission, that's right. On the other hand, if it's an omission from earlier sort of form-filling out or interview at the airport and so on, but all of a sudden something that was omitted now or not mentioned shows up in the testimony in front of the IJ and it turns a marginal case into a fabulous case, I think that is a basis for the judge to say I'm not sure I believe that because this is an important part of the case and it was never mentioned before. Is that right? Well, yes. If the addition to the petitioner's testimony is such that bolsters his claim, then yes, it could trigger such scrutiny. However, in this case, he failed to write down, I believe, that his sister who was already sick with cancer died from shock, I think, as a result of his arrest. While that is something to be considered, he didn't apply for asylum because his sister died. He applied for asylum because he was arrested five times by the Indian police. And the argument is that whatever might have happened to his sister, that wasn't persecution of him. Precisely. And it's not material to his claim. What about his tooth being knocked out? That goes to the severity of the treatment. Yes. He omitted to write down the fact that his tooth was knocked out. That was one instance. And we know from other testimony that he did not prepare the application himself because he also stated that he told whoever was preparing the application to leave out the word tout, which is a police informant in India, and that wound up in the application. So even if he left out the fact that his tooth was knocked out and testified about it and has evidence, like a gap in his tooth, to show that his tooth was knocked out by the police, that is an omission. It is goes to the severity of his claim, yes, but it doesn't mean he's telling a lie simply because he forgot to put it in his application, especially if he was not the one who forgot to put it in his application. Okay. And the country conditions report I stated earlier just does not support the IJ's decision at all, because that same country conditions report indicates that, one, if you are unlucky enough to fall into the hands of the police and detained, then you run the risk of being killed extrajudicially or being seriously beaten and tortured. And no reasonable person would not fear going back to a situation like that. And that is why the country conditions report do not rebut or does not rebut the Petitioner's well-founded fear of future persecution in this case. Okay. Thank you very much. The second Singh case, Harmander Singh v. Gonzales, our now holder, is submitted for decision. Thank you.
judges: Hall, Fletcher W. , Paez